## The People vs. Jacob Garlock.

The terms of the Circuit Judges and Regents of the University, elected in the Ninth and Tenth Judicial Circuits, under the Act of January 29th, 1858, commenced as soon as they had been duly declared-elected; and they were thereafter in full possession, and entitled at once to enter upon the duties, of their offices as soon as they had duly qualified.

*Heard July 9th. Decided July 10th.*

Case reserved from Allegan Circuit.

Defendant was indicted for an assault and battery not charged to have been committed riotously, or upon any public officer in the execution of his duties, or with intent to commit any other offense.

The case came on for trial at a Special Term of said Circuit Court, held July 6th, 1858, Hon. F. J. Littlejohn presiding; when counsel for defendant objected that jurisdiction of prosecutions for simple assault and battery having been conferred upon justices of the peace, the common law proceeding by indictment for that offense was thereby abrogated; and the question arising on such objection was reserved for the opinion of this Court.

A further question was also raised upon the following statement of facts: At the election held in the Ninth Judicial Circuit, on the first Monday of April, 1858, in pursuance of the Act creating the Ninth and Tenth Judicial Circuits, approved January 29th, 1858, Flavius J. Littlejohn was elected Circuit Judge, and a certificate of his election duly made and transmitted to him by the State Canvassers. On the 18th day of May, 1858, said Littlejohn took and filed the constitutional oath of office, as such Judge; and on the 1st day of June following, in pursuance of the Act aforesaid, he fixed, appointed, and transmitted to the various county clerks, and to the newspaper editors in said Circuit, a statement of the terms of the Circuit Courts in the organized counties, respectively, for two years. He also appointed a Special Term for the county

of Allegan, to be held July 6th, 1858, of which the requisite notice was given.

The counsel for defendant objected that the term of the Circuit Judge so elected did not commence until the first day of January succeeding his election, and the question arising upon such objection was also reserved for the opinion of this. Court.

*T. M. Cooley*, for defendant.

*Geo. Y. Warner, Prosecuting Attorney of Allegan County*, for the People.

CHRISTIANCY J.:

The principal question in this case is, Whether the Circuit Judge of the Ninth Circuit, elected on the first Monday in April last, can enter upon the duties of his office prior to the 1st day of January, 1859.

This question depends upon the construction of the Constitution in reference to circuit judges, and the Act of January 29th, 1858.— *S. L. of* 1858, *pp.* 14 *to* 17.

Section one of this Act is an amendment of section one of the Act of April 8th, 1851, providing for the organization of the Circuit Courts. And this amendment creates two additional circuits, — the Ninth and Tenth.ʼ The second section of the Act of 1858 provides for the election, on the first Monday in April, 1858, of a Circuit Judge and Regent of the University in each of said circuits, and that "The subsequent elections for such officers, and the termination of their respective terms, shall be at the times required by the Constitution for judges and regents in other circuits, and that each of the judges for said circuits respectively, shall, on or before the first day of June, 1858, and every two years thereafter, fix and appoint the times of holding the several terms within his circuit for the period of two years thereafter," &c. Section three repeals all acts contravening the provisions of this Act, and provides that the "Act shall take effect immediately."

It is very evident from the provisions of section two that the election was not intended to be an election for the whole term of six years, fixed by the Constitution generally; as it is declared "the subsequent election of such officers, and the termination of their respective terms, shall be at the times required by the Constitution for judges and regents in other circuits." The circuit judges in the other eight circuits were elected in April, 1857, and went into office the first day of January, 1858, according to the Constitution and the law under which they were elected; and their terms will expire on the 31st day of December, 1863: and as the judges of the Ninth and Tenth 'Circuits must go out at the same time, though elected in April, 1858, it is evident the election was intended to be for less than the full term. And we think this is in exact accordance with the requirements of sections seven and twenty of Art. VI., of the Constitution, which, in effect, are incorporated in the Act.

It can not be denied, that, by the third section, the Act in question took full and complete effect, for all purposes, from the date of its approval, and that the term of the officers elected under it commenced immediately upon the determination of the Board of State Canvassers, and the issuing of the certificate of election, unless there be something in the Constitution to prevent the taking effect of the Act, and the commencement of the term, till a later period.

It is admitted that there is nothing in the body of the Constitution itself to postpone the immediate operation of the Act, and the commencement of the official terms, as soon as the result of the election was officially determined. But section 28 of the Schedule provides: "The terms of all state and county officers, of the circuit judges, members of the Board of Education and members of the Legislature, shall begin on the first day of January next succeeding their election"; and it is claimed that this applies to the judges and other officers elected under this Act.

Whether this section of the Schedule was intended to have

any further effect than to provide for the period of transition from the old to the new Constitution, and to put the new Constitution into full operation, it does not become necessary here to decide; though from the preamble, or first clause of the Schedule, declaring its purposes and the appropriate office of such Schedule, it would seem that its chief object was to provide only for such transition; and to give any of its provisions a permanent and continuing operation, after the transition had been fully accomplished, the intent must be clear and manifest.

But, admitting that this section was intended to have permanent effect as a part of the Constitution, still, after a careful examination of the whole subject, we are satisfied it was intended only to apply to officers elected for the full term, and at the time fixed by the Constitution. If literally construed, this section would apply to many cases of elections to fill vacancies only; and we can perceive no better ground for applying it to judges and regents elected at the first election under this Act, for less than a full term, than if they had been elected to fill a vacancy.

We are, therefore, all of opinion that as soon as the judges and regents had been duly declared elected under this Act, their terms of office commenced; and, as soon as they had taken the oath of office and qualified according to the Constitution and the law, they were in full possession of all the powers, and were entitled at once to enter upon the duties of their offices.

The other question stated in the case, we apprehend, was stated *pro forma* only; and we therefore decline its consideration.

Let it be certified accordingly.

The other Justices concurred.